IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION FILE NO. |
| v. | 1:16-CR-145-TWT-JKL-39 |
| ANTARIOUS CALDWELL | |

## **NON-FINAL REPORT AND RECOMMENDATION**

This case is before the Court on Defendant Antarious Caldwell's First Motion to Suppress, in which he moves to suppress firearms that law enforcement officers seized during a traffic stop in Albemarle, North Carolina, on August 5, 2015. [Doc. 2155.] On February 19, 2019, I held an evidentiary hearing at which Stanley County, North Carolina Sheriff Jeff Crisco testified.[1] [*See* Doc. 2172 (Hearing Transcript ("Hr'g Tr."))).] At the conclusion of the hearing, the Court directed Caldwell's counsel to file a post-hearing brief by February 26, 2019. [Doc. 2174 (minute sheet).] No post-hearing brief was filed, however. After considering the testimony of Sheriff Crisco, which the Court finds credible, the other evidence

---

[1] At the time of the traffic stop, Sheriff Crisco was a narcotics detective in Albemarle. (Hr'g Tr. at 3.)

admitted at the hearing, and the argument of counsel at the hearing, I **RECOMMEND** that Caldwell's motion to suppress be **DENIED**.

## I.   BACKGROUND

### A.   Summary of Charges Against Caldwell

On October 24, 2018, a federal grand jury seated in the Northern District of Georgia returned a second superseding indictment in this case charging Caldwell with a count of RICO conspiracy (Count One), one count of Hobbs Act robbery (Count Sixteen), and one corresponding count of knowingly using and carrying a firearm during and in relation to a crime of violence (Count Seventeen). [Doc. 1750 at 2-46, 52-53.] The indictment alleges that Caldwell was a member of the Gangster Disciples, which the government alleges operated as a racketeering enterprise as defined by 18 U.S.C. § 1961(4). [*Id.* at 6-8.] It further alleges that during the time period relevant to this case Caldwell served on the "HATE Committee, an enforcement and clean-up crew of the Gangster Disciples." [*Id.* at 13.]

According to the indictment, in furtherance of the alleged conspiracy, on June 27, 2015, Caldwell and another Gangster Disciples member shot E.W., entered E.W.'s home, and stole a quantity of marijuana. [Doc. 1750 at 35 (Overt Act 96).] The indictment additionally alleges that on July 3, 2015, Caldwell, co-

defendant Donald Glass, and other alleged HATE Committee members planned to rob a drug dealer at a hotel in Stone Mountain, Georgia. [*Id.* at 36 (Overt Act 103).] Allegedly, they delayed the robbery because of police activity in the area, but later that day Caldwell, along with four other Gangster Disciples members, returned to the hotel and shot and killed Edward Chadmon and shot and injured I.M. [*Id.* (Overt Act 104).]

The indictment additionally alleges that on August 8, 2015, Caldwell and Gangster Disciples member R.G., a/k/a "Dric" traveled to North Carolina with a Rossi .357 handgun, a Ruger 9 mm handgun, and a Smith & Wesson .38 caliber handgun. [Doc. 1750 (Overt Act 116).] Those firearms are the subject of Caldwell's motion to suppress.

### B.     The August 5, 2015 Traffic Stop

On August 5, 2015, Detective Clever of the Albemarle, North Carolina, Police Department received a tip from a confidential informant that two men were in the area from Georgia attempting to sell firearms in the East Albemarle area of Albemarle. (Hr'g Tr. at 4-5.)  Sheriff Crisco testified that the confidential informant had been reliable source in the past. (*Id.* at 12-13.)  The informant reported that there were four people in the car, two men and two women, and that the car was a dark Pontiac with Georgia tags. (*Id.* at 5, 21.)  Detective Clever and

a Detective Springer then went to the East Albemarle area of town and spotted a Pontiac matching the description in a shopping center with two men and two women in the vehicle. (*Id.*) One of the women, later identified as Brittney Peoples, was driving the car. (*Id.* at 5, 11.) As Pontiac drove past them, they noticed that Ms. Peoples was not wearing a seat belt. (*Id.* at 6.) They also called in the tag number of the vehicle, which came back as registered to a Volkswagen, not the Pontiac. (*Id.*)

The Pontiac then passed a gas station where Sheriff Crisco and Detective Porter were parked. (Hr'g Tr. at 7.) Sheriff Crisco and Detective Porter pulled out and joined Detectives Clever and Springer in following the Pontiac. A short time later, the Pontiac made an abrupt left turn into a dialysis center parking lot, apparently after observing a North Carolina State Trooper ahead that had pulled over a vehicle. (*Id.*) Detectives Clever and Springer stopped the Pontiac in the parking lot, and Sheriff Crisco and Detective Porter assisted with the traffic stop. (*Id.* at 8.) One of the officers noticed a firearm and ammunition in plain view, and all four occupants were removed from the car, and the vehicle was searched. (*Id.* at 8, 18.) A Rossi .357 magnum, a Ruger 9 mm pistol, and a Smith & Wesson .38 caliber firearm were recovered from the vehicle. (*Id.* at 9.)

The driver of the Pontiac was cited for not wearing a seatbelt, failure to make a left turn from a designated lane, and being an unlicensed driver, all violations of North Carolina state law. (Hr'g Tr. 11, Exs. 2, 3.)

## II.   DISCUSSION

As a threshold matter, the Court notes that Caldwell was merely a passenger in the Pontiac and had no possessory interest in the car; thus, he has no standing to challenge the search of the vehicle. *See United States v. Lee*, 586 F.3d 859, 864 (11th Cir. 2009) (recognizing well-established principle that a passenger in a car who has no possessory interest in the vehicle has no legitimate expectation of privacy in the vehicle, as he does not have the right to exclude others from the car, and, therefore, does not have standing to challenge the search). Nevertheless, the parties agree that Caldwell has standing to challenge to challenge the lawfulness of the traffic stop because he was "seized" when the officers stopped the Pontiac. *See Brendlin v. California*, 551 U.S. 249, 255 (2007) (holding that passengers may also challenge the constitutionality of a stop of a vehicle in which they are riding). Accordingly, the Court limits its analysis to whether the traffic stop was lawful.

A traffic stop is constitutional if it is based upon probable cause to believe that a traffic violation occurred, even if law enforcement's real motivation is suspicion of other criminal activity. *Whren v. United States*, 517 U.S. 806, 810,

813 (1996); *United States v. Harris*, 526 F.3d 1334, 1337 (11th Cir. 2008). "When determining whether an officer had probable cause to believe that a traffic violation occurred, the officer's motive in making the traffic stop does not invalidate what is otherwise objectively justifiable behavior under the Fourth Amendment." *Harris*, 526 F.3d at 1337 (quotation omitted).

Considering the totality of the circumstances, the Court readily concludes that the traffic stop in this case was based on probable cause that at least two traffic violations occurred in the presence of the officers. The officers personally observed the driver of the Pontiac driving the car without her seatbelt, a violation of North Carolina law. *See* N.C. Gen Stat. § 20-135.2A(a) ("[E]ach occupant of a motor vehicle manufactured with seat belts shall have a seatbelt properly fastened about his or her body at all times when the vehicle is in forward motion on a street or highway in this State."). The Pontiac's license plate also came back as issued to a different vehicle, a violation of N.C. Gen. Stat. § 20-111. Accordingly, the officers had probable cause to initiate the traffic stop. Because the traffic stop was lawful, Caldwell's seizure was also lawful. Caldwell's motion to suppress should therefore be denied.

### III. CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Caldwell's First Motion to Suppress [Doc. 2155] be **DENIED**.  There are no matters pending before me for this defendant, and I have not been advised of any impediments to the scheduling this defendant for trial.  Accordingly, this matter as to this defendant is **CERTIFIED READY FOR TRIAL.**

**IT IS SO RECOMMENDED** this 28th day of February, 2019.

_____
JOHN K. LARKINS III
United States Magistrate Judge