# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ANTARIOUS CALDWELL,<br>aka "Fat" or "Phat" | CRIMINAL INDICTMENT<br>NO. 1:16-CR-0145-39-TWT-JKL |

### GOVERNMENT'S SENTENCING MEMORANDUM

Comes Now the United States of America, by Byung J. Pak, United States Attorney; Kim S. Dammers, Ryan K. Buchanan, and Erin N. Spritzer, Assistant United States Attorneys for the Northern District of Georgia; and Conor Mulroe, Trial Attorney for the Department of Justice, and files this Sentencing Memorandum for defendant Antarious Caldwell.

For the reasons that follow, the United States recommends that the Court impose a sentence of **384 months (32 years)** of imprisonment and the maximum available term of supervised release.

## FACTS OF THE OFFENSE

The United States adopts the facts proven at trial and those summarized in the Pre-Sentence Report [PSR], including but not limited to the following:

<u>Position in the Enterprise:</u>  The defendant was a member of the "HATE Committee," a violent subgroup whose purpose was to carry out acts of serious violence, including murder, on behalf of the Gangster Disciples enterprise.  As one cooperator explained at trial:  "[T]hey deal with situations like if you cross the organization, you die."  Trial 1 transcript, 5/2, at 50 (Emmanuel Mitchell).

In addition to the Stone Mountain Inn murder (summarized below) in which the defendant participated with other HATE members, trial evidence showed that the HATE Committee committed other murders and attempted murders including the murder of Demarco Franklin (alleged as Overt Act 102); the nonfatal shooting of Falana Coley (alleged as Overt Act 112); the murder of Rocqwell Nelson and nonfatal shooting of Jordan Turner (alleged as Overt Act 113); and the murder of Robert Dixon (alleged as Overt Act 114 and Counts Eighteen and Twenty).

The defendant's membership in the HATE Committee was proven through the testimony of multiple cooperating defendants as well as documentary evidence.  *See* Trial 1 transcript, 4/22, at 67 (Quantavious Hurt); Trial 1 transcript, 4/30, at 183 (Rodricous Gresham); Trial 1 transcript, 5/3, at 52 (Karim Ficklin);

Gov. Ex. 724 (intercepted call between co-defendant Kevin Clayton and unindicted co-conspirator Stephen Lloyd, discussing 2015 arrests of certain HATE Committee members and remarking that "Phat," who was "really doing all the shit," had not been charged along with the others).

Caldwell was also arrested with fellow HATE Committee member Rodricous Gresham after a traffic stop in Albemarle, North Carolina. *See* PSR ¶¶ 96-99; Trial 1 transcript, 4/29, at 176-206 (arresting officers); *id.* 5/1, at 18-21 (Rodricous Gresham). The pair was in possession of three firearms, two of which had been used in HATE Committee shootings including the murder of Nelson and shooting of Coley. *See* Trial 1 transcript, 5/8, at 112-113.

<u>Home Invasion Robbery and Shooting (OA 96; Counts 16 & 17)</u>: On June 27, 2015, Caldwell shot victim Eric Wilder during an armed home invasion robbery. Along with fellow HATE Committee member Rodricous Gresham, Caldwell formed a plan to rob a person he believed to possess drugs and money. Caldwell was armed with a rifle and Gresham with a handgun. When Wilder tried to bar their entry into his home, Caldwell fired shots through the door, kicked the door in, and entered the residence. Crime scene photos showed multiple bullet holes and rifle casings in the apartment. Wilder, who later identified Caldwell in a photo array, was struck by Caldwell's shots and hospitalized in "serious and critical condition." The robbery yielded only a small

amount of marijuana for Caldwell and Gresham.  *See* PSR ¶¶ 82-83; Trial 1 transcript 4/30 at 124-139 (crime scene technician); 4/30 at 181-91 (Rodricous Gresham); 5/1 at 120-33 (Eric Wilder).

Stone Mountain Inn Murder (OA 103-105):  On July 3, 2015, Caldwell was a shooter during a gang-related murder that left one victim dead and two others injured.  According to trial testimony, Caldwell and other members of the HATE Committee, including Rodricous Gresham and Karim Ficklin, were at the Stone Mountain Inn visiting with other Gangster Disciples members who were selling drugs there.  A dispute arose about the other members' unwillingness to "plug in," or join the official gang structure.  The conflict turned physical and Caldwell fired shots that struck victim Edward Chadmon in the leg.  More gunfire was then exchanged, resulting in the death of Chadmon and the wounding of Darius Wilder and Rodricous Gresham.  *See* PSR ¶¶ 70-76; Trial 1 transcript, 4/30 at 197-216 (Rodricous Gresham); 5/1 at 201-22 (Isiah McCray, Chadmon's brother); 5/3 at 73-85 (Karim Ficklin).

Flight from Arrest:  Following his indictment in this case, Caldwell was a fugitive from law enforcement for several weeks.  On November 8, 2018, federal agents located Caldwell, watched him enter a vehicle, and then began following in order to attempt an arrest.  When he realized police were following him, Caldwell fled in a vehicle at speeds exceeding 80 miles per hour, speeding

through residential neighborhoods and a school zone.  Agents briefly lost sight of Caldwell's vehicle, and when they found it moments later he had left the car and disappeared.  Caldwell was finally arrested more than two months later.  *See* Trial 1 transcript, 4/23 at 129-138 (Special Agent Brittany James).

Failure to Withdraw:  Caldwell never left the Gangster Disciples, renounced the group's activities, or otherwise withdrew from the racketeering conspiracy.

**GUIDELINES ISSUES**

In his objections to the PSR, the defendant contends that his sentence for RICO Conspiracy is limited to 20 years' imprisonment because it is "impossible to tell" from the verdict whether the jury found that his participation in the RICO Conspiracy involved murder (O.C.G.A § 16-5-1 ), which carries a potential life sentence, or merely attempt (O.C.G.A. § 16-4-1) or conspiracy (O.C.G.A. § 16-4-8) to commit murder, which carry maximum sentences less than life.[1]  The defendant's argument misstates the character of the sentencing enhancement and ignores the unambiguous language of the verdict form.

---

[1] Co-defendant Alonzo Walton, set for sentencing at a later date, has made a substantially identical argument in his own PSR objections.

5

## A.   BACKGROUND AND PROCEDURAL HISTORY

### 1. Indictment's Allegations Regarding Murder

Count One of the Second Superseding Indictment ["SSI"] makes reference to murder offenses in three places:

First, in the section captioned "The Racketeering Conspiracy," the indictment alleges that the defendant and others conspired to participate in the affairs of the enterprise through a pattern of racketeering activity "which consisted of multiple threats and acts involving: (a) murder, in violation of Official Code of Georgia, Sections 16-5-1; 16-4-1; and 16-4-8."  SSI at 10.  The indictment also alleges nine other types of racketeering activity.  *Id.* at 10-11.

Second, in the section captioned "Manner and Means of the Conspiracy," the indictment alleges that "To perpetuate the enterprise and maintain and extend its power, members and associates of the enterprise committed and conspired to commit acts including murder, that is, causing the death of a human being unlawfully and with malice aforethought or causing the death of another human being, irrespective of malice, in the commission of a felony."  SSI at 17.  This language tracks the statutory elements of murder under Georgia law.  The "Manner and Means" section further states that members and associates committed "attempted murder, that is, performing an act that constitutes a substantial step toward the commission of murder."  SSI at 17.

Third, in a section captioned "Notice of Enhanced Sentencing," the indictment alleges that certain defendants, including Caldwell, "joined and remained in the RICO conspiracy charged in Count One knowing and agreeing that members of the enterprise engaged in acts involving murder, in violation of Official Code of Georgia 16-5-1." The Notice of Enhanced Sentencing does *not* cite the statutory code sections for attempt or conspiracy to commit murder.

Copies of the Second Superseding Indictment, with certain non-pertinent portions redacted, were provided to the jury during its deliberations. *See* Trial 1 transcript, 5/14, at 159-161.

2. Jury Instructions Regarding Murder

The Court's jury instructions also made reference to murder offenses. When defining the various offenses alleged to make up the pattern of racketeering activity, the court stated that "acts involving murder . . . includes murder, attempted murder, and/or conspiracy to murder." 5/14/19 Transcript at 115. The Court next defined the offense of murder under Georgia law, *see id.* at 115-16, and then separately defined the offense of conspiracy to commit murder, *see id.* at 116. The instructions did not define "attempted murder" as a separate offense. However, later in the Court's instructions regarding racketeering activity, after defining all the various types of racketeering activity, the court explained the law of attempt generally. *See id.* at 119.

7

Toward the end of the RICO Conspiracy instruction, the Court addressed the special sentencing factors by explaining:

> "You will also need to decide specific questions about certain types of racketeering activity, namely, acts involving murder or drug trafficking. For these racketeering activity types, you must unanimously decide whether the Defendant joined or remained in the RICO conspiracy knowing that the enterprise engaged in this type of racketeering activity."

5/14/19 Transcript at 121.

### 3. Verdict Form Question Regarding Murder

Finally, the verdict form required a finding regarding murder. For each defendant charged in Count One, the verdict form asked first whether that defendant was guilty or not guilty of the offense of RICO Conspiracy generally, and next asked, "Did the RICO conspiracy involve murder?" *See* ECF 2452 at 1 (jury's completed verdict form for defendant Caldwell). The verdict form did not ask any question about attempted murder or conspiracy to murder, and did not use the phrase "acts involving murder."

### 4. Objections and Argument Regarding Instructions and Verdict Form

Various other co-defendants filed written objections to the instructions and/or verdict form, but no defendant made the specific argument now before the court. *See* ECF 2411 (co-defendant Gumbs requesting that verdict form require finding of "conspiracy to murder" and specify name of victim); ECF 2412

8

(co-defendant Walton requesting that verdict form require finding that defendant "committed or knowingly participated in" the murder of a specified victim at a specified place and time); ECF 2422 (co-defendant Glass objecting to the ordering of "guilty"/"not guilty" and "yes"/"no" choices).

At a charge conference on May 10, the court queried the parties about each jury instruction in sequence, and asked whether there were any remaining objections. Again, each defendant failed to raise the objection now argued by Caldwell. The only objection relating to the court's instruction on sentencing factors came from co-defendant Gumbs, who requested that the phrase "enterprise engaged in" be changed to "enterprise *would* engage in." Trial 1 transcript, 5/10, at 41-43. The parties also discussed the Verdict Form, raising several issues not pertinent to this matter. *Id.* at 47-54. At that time counsel for co-defendant Gumbs renewed his argument that the verdict form should "identify the victim or victims that [the] defendant to be enhanced is found to have been involved in the murder of." *Id.* at 54-55. The Court rejected that argument, agreeing with the government that it was an "absolute misstatement of the law." *Id.* at 55.

Finally, after the charge conference and after closing arguments, but before the jury was charged, co-defendant Walton filed a written objection requesting that the following language be added to the instructions: "In order to find the

9

special finding pertaining to murder, the Government must prove beyond a reasonable doubt that the Defendants joined and remained in the RICO conspiracy charged in Count One knowing and agreeing that members of the enterprise engaged in acts involving murder." ECF 2428 at 1. The court declined to modify its existing language regarding the special finding, explaining: "We discussed this at length, I think, the very first week of the trial. [The government] submitted a proposed supplemental charge. Nobody objected to that. I incorporated it into my charge on page 20, and nobody objected to that. . . . I'm going to leave it the way it is." Trial 1 transcript, 5/14, at 98-99.

## B.   ANALYSIS

"Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). One such fact in this case is what type of racketeering activity the defendant's offense was "based on." If the RICO Conspiracy conviction was "based on" any predicate offense carrying a possible life sentence, the defendant's maximum penalty is life; otherwise, it is twenty years. *See* 18 U.S.C. § 1963(a); *see also United States v. Nguyen*, 255 F.3d 1335, 1343 (11th Cir. 2001) (applying *Apprendi* to § 1963(a)). The crime of murder under

Georgia law carries a possible sentence of life imprisonment. *See* O.C.G.A. § 16-5-1.

The defendant now argues that he is not eligible for a life sentence on the RICO Conspiracy count because, he says, the jury's special sentencing finding might have been based on attempted murder or conspiracy to murder, rather than actual murder. This argument should be rejected for both procedural and substantive reasons.

1. The Defendant's Argument was Forfeited

To begin, it bears noting that the defendants never objected on this basis to the court's jury instructions or verdict form at any time prior to the guilty verdicts. The defendant's belated argument should therefore be considered under the plain-error standard. *See* Fed. R. Crim. Pro. 52; *see also United States v. Asher*, No. 1:09-CR-414-WSD, 2012 WL 13106304, at *31-32 (N.D. Ga. Oct. 17, 2012) (Duffey, J.), *aff'd*, 564 F. App'x 963 (11th Cir. 2014) (district court applying plain-error review on Rule 33 motion for new trial based on unobjected-to evidence). If the defendants believed that there was fault with the Court's instructions and verdict form, then the time to raise those concerns was before the jury was charged, when there was still opportunity to examine the supposed defect and repair it if necessary. *United States v. Stout*, 667 F.2d 1347, 1354 (11th Cir. 1982) (explaining Rule 52's purpose to "promote efficient judicial

11

administration and to prevent parties from gambling for favorable verdicts and then resorting to appeal on errors that might have easily been corrected by objection at trial"); *United States v. Vasen*, 222 F.2d 3, 5 (7th Cir. 1955) ("[C]ommon fairness requires that before it can be successfully contended [on subsequent review] that the trial court has erred, that court must have been given an opportunity to rectify any inadvertent comment, ruling or instruction.").

Moreover, beyond simply forfeiting the objection, co-defendant Walton proactively invited the purported ambiguity when he requested a jury charge permitting a "special finding pertaining to murder" on the basis of the defendant's "knowing and agreeing that members of the enterprise engaged in *acts involving* murder," ECF 2428 at 1 (emphasis added). *Cf. United States v. House*, 684 F.3d 1173, 1196 (11th Cir. 2012) ("Where a party expressly accepts a jury instruction, 'such action constitutes invited error' and 'serve[s] to waive [his] right to challenge the accepted instruction on appeal.'" (quoting *United States v. Silvestri*, 409 F.3d 1311, 1337 (11th Cir. 2005)).

2. <u>The Jury Found the Defendant Accountable for Actual Murder</u>

On the merits, the defendant's argument fails because the verdict form specifically asked the jury to decide whether "the RICO conspiracy involved *murder*," and made no mention of attempt or conspiracy. *See* ECF 2452 at 1 (emphasis added).

As the Eleventh Circuit has explained, a "verdict form must be considered in the context of the jury instructions as a whole." *United States v. O'Neal*, 362 F.3d 1310, 1314 (11th Cir. 2004). In this case, the context of the court's other instructions confirms that the jury meant what it said when it found that "the RICO conspiracy involved murder." When defining the various types of racketeering activity, the court plainly distinguished "murder" from "conspiracy to murder," and defined each by name. There was accordingly no ambiguity when the verdict form specified the former offense to the exclusion of the latter.

Just like the verdict form, the operative language of the indictment also limited the jury's consideration to actual murder. Although the pattern of racketeering activity for the overall RICO Conspiracy was alleged to include violations of O.C.G.A. §§ 16-5-1 (murder); 16-4-1 (attempt); and 16-4-8 (conspiracy); the Notice of Enhanced Sentencing against particular defendants was based *solely* on § 16-5-1, and not §§ 16-4-1 or 16-4-8. *See* SSI at 43.

Common sense fortifies this straightforward reading of the verdict form and sentencing notice. Because this is a RICO Conspiracy case charged under 18 U.S.C. § 1962(d), as opposed to "substantive RICO" under § 1962(c), the heart of the offense is the defendant's *agreement* that the members of the enterprise, including himself, *would* engage in the specified types of racketeering activities. The defendant's argument here asks the Court to imagine the jury found that the

13

defendant agreed that members would try to commit murders, and/or agreed that members would conspire to murder, but did *not* agree that the enterprise would ever succeed in those efforts by accomplishing a murder. This is incoherent: "[I]t would be the height of absurdity to conspire to commit an attempt, an inchoate offense, and simultaneously conspire to fail at the effort." *United States v. Meacham*, 626 F.2d 503, 509 (5th Cir. 1980).

Indeed, the evidence at trial showed not only that the defendant agreed that members of the enterprise would engage in murder, but that he belonged to the "HATE Committee" subgroup whose express purpose was to commit murders for the gang, and further that he participated himself in at least one actual murder: the killing with malice of Edward Chadmon at the Stone Mountain Inn. There is accordingly no serious question that the jury properly found that the defendant's RICO Conspiracy offense was "based on" murder, qualifying him for a life sentence under 18 U.S.C. § 1963(a).

The defendant invokes the rule of lenity, but that canon of statutory construction is inapplicable here. The rule of lenity is used to interpret *statutes*, and the defendant has cited no case applying the rule of lenity to a purportedly ambiguous jury verdict. *See Moskal v. United States*, 498 U.S. 103, 107 (1990) ("We have repeatedly emphasized that the touchstone of the rule of lenity is *statutory* ambiguity." (internal quotation marks omitted; emphasis added)). Moreover,

14

because the verdict form was not ambiguous, there is no ambiguity to resolve. The Court should therefore reject the defendant's argument and find that the RICO Conspiracy verdict supports, and the Guidelines recommend, a life sentence.

3. <u>Regardless of the Jury's Finding, the Maximum Total Penalty is Life</u>

Finally, even if his RICO Conspiracy conviction were capped at twenty years, Caldwell would still be eligible for a life sentence in this case because his conviction under 18 U.S.C. § 924(c) carries a maximum penalty of life.

## SENTENCING RECOMMENDATION

With the Guidelines correctly calculated at life imprisonment, the government recommends a sentence of 384 months, representing a modest downward variance (effectively a decrease of one offense level). This reduction is necessary to ensure that the sentences imposed in this case properly reflect the relative culpability of all co-defendants, including other more culpable co-defendants for whom the government will request life imprisonment.

Although defendant Caldwell was highly violent, he occupied a lower position in the organization's hierarchy. He was an enthusiastic participant in the Gangster Disciples' culture of violence, but it was other more senior members who established that culture and taught it to young recruits.

Nonetheless, a lengthy prison sentence is necessary to reflect the seriousness of the offense, afford adequate deterrence, and protect the public from further crimes by this defendant. *See* 18 U.S.C. § 3553(a). The defendant committed acts that were vicious and brazen, demonstrating a callous disregard for the value of human life. This pattern of behavior was consistent with his criminal history, which includes a 2016 firearm conviction that, according to charging documents, resulted in a victim's death. *See* PSR ¶ 148. This defendant and others must be deterred not only from committing similar violent acts in the future but also from associating with gangs like the Gangster Disciples that glorify such violence.

Finally, alongside his offense conduct, the defendant's reckless flight from arrest showed a continued disrespect for public safety and refusal to recognize the authority of the law. A substantial sentence is therefore also necessary to protect the public from the high likelihood that the defendant will reoffend if released too soon. The government calculates that, after serving a sentence of 32 years, the defendant would be 57 years old when released from custody. By then, it is hoped that he will have abandoned his violent lifestyle and will be sufficiently rehabilitated to reenter society as a productive and law-abiding member.

## CONCLUSION

For the foregoing reasons, the government recommends that the court sentence the defendant to **384 months (32 years)** of imprisonment and the maximum available term of supervised release.

Respectfully submitted,

BYUNG J. PAK
*United States Attorney*

KIM S. DAMMERS
RYAN K. BUCHANAN
ERIN N. SPRITZER
*Assistant United States Attorneys*

*s/ CONOR MULROE*
*Department of Justice Trial Attorney*
New York Bar
Conor.Mulroe@usdoj.gov
1301 New York Ave, NW, Suite 700
Washington, DC 20530
(202) 330-1788

## **CERTIFICATE OF SERVICE**

The undersigned served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

This 21st of November, 2019.

s/*CONOR MULROE*
*Department of Justice Trial Attorney*
